UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RALPH KOOPMAN,

        Plaintiff,

v.                                                 Case No. 06-C-0163

FOREST COUNTY POTAWATOMI
MEMBER BENEFIT PLAN, FOREST
COUNTY POTAWATOMI COMMUNITY
OF WISCONSIN, a sovereign Indian nation,
CHAIRMAN HAROLD FRANK and
ATTORNEY GENERAL JEFF CRAWFORD,

        Defendants.

## DECISION AND ORDER

Plaintiff Ralph Koopman commenced this action on February 6, 2006, seeking to enjoin the defendants from following through on their decision to terminate health insurance benefits for him and his family effective February 10, 2006, at 12:01 a.m. Koopman claims that such termination would violate his rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 101 *et seq*. The case is presently before me on Koopman's motion for a temporary restraining order and/or preliminary injunction. For the reasons stated herein, the motion will be denied.

**I.**

The facts, for the most part, are not in dispute. Koopman, an attorney, was hired as a special counsel for the Forest County Potawatomi Community of Wisconsin (the "Tribe") on or about May 1, 1995. The Tribe maintains a self-funded health and welfare plan providing medical, dental, vision and short-term disability benefits known as the Forest County Potawatomi Member Benefit Plan (the "Plan"). It is undisputed that at all times material hereto, Koopman was an independent contractor and not an employee of the Tribe. The Plan provides coverage for certain eligible employees of the tribal government and certain tribal operations; it expressly excludes from coverage independent contractors. Notwithstanding this provision of the Plan, on or about November 1, 1997, Koopman became a participant in and received insurance coverage under the Plan. His benefits were confirmed and ratified by the tribal chairman and were not questioned until late May of 2003, when defendant Jeff Crawford, Attorney General for the Tribe, advised Koopman in person and in writing that he was not eligible to receive the benefits and that he should obtain replacement coverage within 30 days. Crawford was apparently overruled, and on August 9, 2003, at a General Council meeting, tribal members voted to honor Koopman's contract as previously approved by the General Council and to continue his receipt of medical benefits.

On or about January 13, 2004, Koopman received a letter from defendant Harold Frank, Tribal Chairman, stating that his contract with the Tribe was terminated effective February 11, 2004. With respect to his health insurance benefits, the letter stated that "we will deal with the issue of health benefits under separate cover." (Second Koopman Aff. ¶ 7.) Koopman waited to receive further communication from the Tribe concerning his health insurance benefits. When none was forthcoming, he made several calls to the tribal insurance department inquiring about his conversion

rights under COBRA. Each time he was advised that the insurance department had not been formally notified of his termination, and that there was nothing that he could or should do at that time. Shortly thereafter a dispute arose within the Tribe concerning whether the action taken with respect to Koopman's contract was lawful. A lawsuit concerning this issue is still pending in the tribal court, but Koopman is not a party to it. (Second Koopman Aff. ¶¶ 10-11.)

On or about December 7, 2004, Koopman received a letter from the tribal insurance department that contained a "Notice of Right to Elect COBRA Continuation Coverage." The notice stated that Koopman's eligibility for health coverage terminated on December 4, 2004, and that he was entitled to receive COBRA coverage for up to eighteen months. Koopman elected to receive that coverage and contends that he has promptly paid all required premiums since that time. As a result of his election to receive continued coverage, Koopman expected his benefits to continue for an additional eighteen months or through May 31, 2006.

On or about January 11, 2006, Koopman's attorney received a letter from an attorney representing the Tribe stating that his health insurance benefits would terminate on February 10, 2006, at 12:01 a.m. The attorney noted in the letter that although Koopman had been enrolled in the Plan, he was not eligible for enrollment since he was not an employee of the Tribe. The Tribe's attorney also stated that even if Koopman had been eligible, he was notified on January 12, 2004, that he was terminated by the Tribe. Given a termination date of January 12, 2004, the attorney noted that even if Koopman was entitled to a continuation of coverage under COBRA, his right to continued coverage would have expired on or about July 12, 2005. Thus, any coverage Koopman and his family were entitled to receive under COBRA had already been provided. Finally, the Tribe's attorney acknowledged the that in November 2004, an employee of the Tribe's insurance

department sent Koopman a notice purporting to give him the opportunity to continue coverage until May of 2006. This notice, according to the Tribe's attorney, was an internal error of which Koopman may have been aware of at the time. For all of these reasons, Koopman was advised that his insurance coverage would be terminated as if 12:01 a.m. on February 10, 2006.

Koopman filed a motion for an ex parte temporary restraining order and preliminary injunction on February 8, 2006. In addition to the foregoing facts, he claims that he has attempted to obtain comparable replacement health insurance coverage for himself and his family. He states that his wife is 61 years of age and has been diagnosed with fibromyalgia. He claims that her condition could change in severity in a very short period of time and she is now pursuing alternative methods of treatment. He and his wife also have high blood pressure for which they take medication. Koopman states that these medical conditions have made it difficult for him to find comparable replacement coverage. (Koopman Aff. ¶ 14.) With his limited financial resources, Koopman states he would be unable to pay for any sophisticated diagnostic tests, surgical procedures, or for any extended hospital stay which could become necessary at any time due to his wife's disability. (Koopan Aff. ¶ 15.)

Because both sides had already retained counsel concerning the matter, I declined to order any ex parte relief and scheduled the matter for a telephone hearing on the morning of February 10, 2006. Upon consideration of the record before me and the arguments made at that time, I denied the motion for a temporary restraining order because I was not convinced Koopman had made a sufficient showing of a likelihood of success on the merits or that he would suffer irreparable harm with no adequate remedy at law. However, I agreed to consider the issue further after Koopman had an opportunity to respond to the brief filed on the defendants' behalf just prior to the hearing and

4

set a further hearing for February 14, 1006. Having now considered the additional arguments of the parties, I remain convinced that Koopman's request for preliminary relief should be denied.

## II.

The requirements for obtaining a preliminary injunction are well established. A party seeking a preliminary injunction must demonstrate that (1) the moving party has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the defendant will suffer if the injunction is granted; and (5) the injunction will not harm the public interest. *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir. 1997).

The defendants have challenged Koopman's contention that he has shown a likelihood of success on the merits and his contention that he would suffer irreparable harm if the relief requested is not granted at this time. As an initial matter, however, defendants argue that this court lacks jurisdiction over the matter because the Tribe and those acting on its behalf are immune from liability. Based on the Tribe's sovereign status, defendants argue that ERISA is not applicable to them. Thus, they argue plaintiff's action cannot succeed and should be dismissed.

This argument was rejected by the Seventh Circuit in *Smart v. State Farm Insurance Co.*, 868 F.2d 929 (7th Cir. 1989), and defendants' efforts to distinguish this case from *Smart* are unavailing. In *Smart*, an Indian tribe member sued in state court for unpaid benefits under a group health insurance policy issued by State Farm to employees of the Lake Superior Chippewa Tribe. State Farm removed the case to federal court claiming federal jurisdiction under ERISA. The

plaintiff challenged federal jurisdiction claiming that ERISA did not apply to the tribe because of its status as an independent sovereign. The Seventh Circuit rejected the plaintiff's argument and held that as a statute of general application ERISA applied to Indian tribe employers. Its holding is controlling here. Accordingly, I find that ERISA applies and this court has subject matter jurisdiction under 28 U.S.C. § 1331.

Although defendants also argue that Koopman is first required to exhaust his administrative remedies under the Plan and any other remedies he may have in Tribal court, I need not address these issues since I conclude Koopman is not likely to succeed on the merits in any event. In essence, Koopman's claim is that he is entitled to a continuation of coverage under the Plan for a period of eighteen months after he was given formal notice of his rights under COBRA, regardless of when his employment with the Tribe was terminated. (Pl.'s Reply Br. at 4, n.3.) This is not the law.

ERISA, as amended by COBRA, requires that an "employer" who sponsors a group health insurance plan must offer employees and "qualified beneficiaries," including spouses and dependent children, the opportunity to continue their health insurance coverage, at group rates but at their own expense, for at least eighteen months after the occurrence of a "qualifying event"-such as a layoff or termination. *See* 29 U.S.C. §§ 1161-1168. The term "qualifying event is expressly defined by the statute. It means:

> with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:
>
> (1) The death of the covered employee.

6

> (2) The termination (other than by reason of such employee's gross misconduct), or reduction in hours, of the covered employee's employment.
>
> (3) The divorce or legal separation of the covered employee from the employee's spouse.
>
> (4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C. § 1395 et seq.].
>
> (5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
>
> (6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

29 U.S.C. § 1163.

Here, the "qualifying event" was the termination of Koopman's employment. Koopman concedes that he was notified by letter dated January 12, 2004 that his contract had been terminated effective February 11, 2004. There is no evidence that he worked for or was paid by the Tribe after that date. Under the plain language of the statute, I conclude that Koopman's right to continue his benefits under COBRA ran from February 11, 2004, the date of his termination. Eighteen months of coverage would have run out on August 11, 2005. Instead, the Tribe provided Koopman and his family with coverage for an additional six months until February 10, 2006. Thus, assuming Koopman was eligible for benefits under the Plan, a matter vigorously disputed by the defendants since he was not an employee, he received a continuation of his coverage for a longer period than required by law, much of it for free. Based on these facts, the defendants contend Koopman has suffered no harm.

But the purpose of COBRA is not simply to allow individuals to avoid becoming uninsured for an additional eighteen months after a qualifying event. "COBRA's purpose is to prevent gaps

in health care coverage." *Livingston v. South Dakota State Medical Holding Company, Inc.*, 2006 WL 196304 (D. S.D.). Gaps in coverage can result in exclusions for pre-existing conditions when new coverage is obtained. See 29 U.S.C. §§ 1181, 1191. Koopman argues that he relied on the Plan's representation that his coverage would continue under COBRA until May 31, 2006, and intended to begin seeking replacement coverage in late March or early April of this year. By terminating his coverage on only one month notice approximately four months prematurely, Koopman contends he has been deprived of the opportunity to find replacement coverage.

The difficulty with this argument, however, is that Koopman offers no evidence that he could find comparable replacement coverage, even if he had four more months. At the hearing on his motion, he conceded that any private insurance he purchased would exclude any pre-existing conditions, but suggested that he could close his own law practice and seek employment with an employer that provided health insurance. This argument, which is not clearly presented, is too speculative to support the issuance of a preliminary injunction. I thus conclude that Koopman has failed to show he has been harmed by the erroneous COBRA notice received from the Plan.

This does not mean, however, that the defendants have fully complied with the requirements of the law and may not ultimately be liable to Koopman. COBRA requires that notice of a "qualifying event" be given to the plan administrator. 29 U.S.C. § 1166(a). When the "qualifying event" is a termination of employment, the employer must notify the plan administrator within thirty days, and the plan administrator must then give the participant notice of the right to continue coverage under COBRA within fourteen days. 29 U.S.C. § 1166(a)(2), (4) and (c). An administrator who fails to provide the required notice "may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such

8

failure . . . ." 29 U.S.C. § 1132(c)(1). In addition, the court may order such other relief as it deems proper. *Id.* Here, it appears clear that the administrator of the Plan failed to provide Koopman a timely and proper notice of his rights under COBRA. It therefore follows that even if he is not entitled to the preliminary relief he now seeks, Koopman may be entitled to significant statutory damages. And if Koopman ultimately is able to show that had it not been for the inaccurate notice he would have been able to obtain replacement coverage without any exclusion for pre-existing conditions, his recovery could be significantly more. These are certainly matters the defendants may wish to consider in deciding how to proceed. But they do not convince me that an order for the preliminary relief Koopman seeks here is warranted.

In addition to his failure to establish a likelihood of success on the merits, Koopman has also failed to demonstrate irreparable harm. I do not mean to minimize the importance of health insurance to individuals living in this country. As Judge Wood observed in *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 581 (7th Cir. 1999), "[f]ew things are more important to people in this uncertain world than their medical insurance, if indeed they are fortunate enough to find themselves in the 85% of the United States population that enjoys some level of coverage." At the same time, it is important to distinguish between the denial of health insurance and the denial of health care for serious and immediate medical needs. While the loss of health care benefits under certain circumstances can constitute "irreparable injury" sufficient to warrant preliminary injunctive relief, see, e.g., *Risteen v. Youth For Understanding, Inc,* 245 F.Supp.2d 1, 16 (D. D.C. 2002), courts have generally found "irreparable injury" where the plaintiff additionally alleges a critical need for healthcare, as opposed to a mere financial hardship. *Carabillo v. ULLICO Inc. Pension Plan and Trust*, 355 F.Supp.2d 49, 55 (D. D.C. 2004). In *Risteen*, for example, the court found that the

9

plaintiff's loss of healthcare would result in "irreparable harm" because in addition to the fact that he was unemployed and had no income, he was already foregoing critical medical attention for congestive heart failure and also required prostate surgery. 245 F.Supp.2d at 3, 16.

Here, Koopman alleges the his wife has fibromyalgia, but says nothing about what, if any, treatment is called for or the costs thereof. There is nothing in the record from which to conclude that the loss of his health benefits will result in the loss of health care essential to her well-being. As Judge Wood noted, many people in this country do not have health insurance. If the loss of health benefits were itself sufficient to establish irreparable harm, requests for injunctive relief would be routine in wrongful discharge cases, since for most people, health insurance is tied to their employment. Koopman's vague statements that his financial resources are "severely limited" and he would be "unable to pay for any sophisticated diagnostic tests, surgical procedures, or for any extended hospital stay which could become necessary at any time due to my wife's debilitating condition" (Koopman Aff. ¶ 15) do not establish irreparable harm. For this reason, too, I conclude the motion must be denied.

Accordingly, and for the reasons stated above, Koopman's motion for a temporary restraining order and preliminary injunction is **Denied.**

**So ordered** this   15th   day of February, 2006.

                                            s/ William C. Griesbach
                                            William C. Griesbach
                                            United States District Judge