UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RALPH KOOPMAN and KATHY KOOPMAN,

    Plaintiffs,

  v.                                                   Case No. 06-C-163

FOREST COUNTY POTAWATOMI
MEMBER BENEFIT PLAN, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Ralph Koopman, formerly an attorney employed by the Forest County Potawatomi ("the Tribe"), filed this action to enforce rights he asserts under the Tribe's employee insurance plan pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161 *et seq.*, and the Employee Retirement Income Security Act of 1976 (ERISA), 29 U.S.C. § 1001 *et seq*. The Tribe has moved to dismiss or stay this action pending an adjudication of the issues by the tribal court. In addition, the plaintiff has moved to file a second amended complaint and disqualify the Tribe's attorneys, and several Tribe members have sought to intervene in this action.

## ANALYSIS

The pertinent facts of this case are set forth in my February 15, 2006 Decision and Order denying the plaintiff's motion for a temporary restraining order. The defendants have now moved to dismiss or stay this case in lieu of an action they have filed in tribal court involving the same issues raised in this case. In support, they cite the principle of tribal exhaustion, which is a

prudential doctrine grounded in comity. The Supreme Court has summarized the doctrine as follows:

> Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a "full opportunity to determine its own jurisdiction." In diversity cases, as well as federal-question cases, unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs. Adjudication of such matters by any nontribal court also infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law.

*Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16 (1987) (citations omitted); *see also* Bryan Cahill, "Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians: Bringing the Federal Exhaustion Rule of Tribal Remedies Home to Wisconsin Courts," 2004 Wis. L. Rev. 1291, 1326 (summarizing doctrine). Several policies underlie the doctrine, but among the most important are the principles of comity and respect for tribal self-government: "The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts." *LaPlante,* 480 U.S. at 16-17.

The plaintiffs contest the defendants' motion. They protest that jurisdiction "clearly lies with this court" because this action involves the federal ERISA statute. They also state that any disputes governing the ERISA plan in this case will not involve any tribal governmental functions, and thus federal law can be applied regardless of the fact that an Indian tribe is involved. *See Smart v. State Farm Ins. Co.,* 868 F.2d 929, 933 (7th Cir. 1989). Yet these arguments miss the mark entirely. Of course this court has jurisdiction, or else we would not even need to entertain an

2

abstention or exhaustion argument. "As with the doctrine of abstention, the doctrine of tribal exhaustion does not deprive a district court of subject-matter jurisdiction." *Altheimer & Gray v. Sioux Mfg. Corp.* 983 F.2d 803, 813 (7th Cir. 1993). The doctrine presumes that tribal courts are competent to decide questions of federal law. *Id.* at 814. Further, the question presented is not whether this court could, in the abstract, decide disputed questions regarding an ERISA plan. Instead, the question is whether, under the principles of comity set forth in *LaPlante* and *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845 (1985), this court should rule on the issues raised by this lawsuit or whether it should defer to the tribal court.

It is clear that this case presents a paradigmatic opportunity to defer to the tribal court. Although the plaintiffs attempt at times to portray this case as a simple dispute over ERISA benefits, it is clear from the filings that it is anything but. Instead, the case raises substantial questions about the role of the Tribe's General Council (which consists of all of the Tribe's voting members), the tribal constitution, the authority of the tribal leaders, the Tribe's employment practices, and even the Tribe's ability to retain counsel to represent it.

For example, the plaintiffs have filed a motion to disqualify the Tribe's counsel. They assert that Godfrey & Kahn, the firm representing the Tribe in this action, has no authority to appear for them because its contract with the Tribe expired on August 30, 2005. Since the contract's expiration, the General Council, which in the plaintiffs' view has exclusive authority to retain counsel, has not acted to do so. It is clear that this court's ruling on that motion would involve substantial meddling in the manner in which the Tribe retains counsel and would require evaluation of the Tribe's internal affairs. Remarkably, in their reply the plaintiffs state that they have standing to challenge the Tribe's retention of Godfrey & Kahn because any judgment this court would enter

3

could later be reversed if Godfrey & Kahn is later determined to have lacked authority to represent the Tribe. Rather than stating grounds for disqualification, however, this seems a perfect reason to abstain from deciding this action and defer to the tribal court for a determination of the propriety of counsel's retention. Even in the plaintiffs' own view, I cannot proceed to resolve the dispute over benefits until I determine the propriety of the Tribe's procedures for retaining counsel to defend it, a determination which involves the Tribe's own internal affairs.

In addition, I note that several Tribe members have petitioned to intervene in this action. Among other things, they state that they are "concerned General Council members seeking to protect the FCPC Const., Art IV inherent and fiduciary duties regarding the approval of attorney contracts." (Docket No. 60 at 3.) The petitioners also assert concern over the way the Tribe has treated Koopman and claim a right to intervene because the matter affects the Tribe's management of its assets. Again, they claim the Tribe is violating its own Constitution. Thus, the motion to intervene underscores the fact that this lawsuit–ostensibly a simple dispute about a health benefit plan–has the potential to blossom into a wide-ranging case about the tribal constitution, the role of the Council and the powers of tribal authorities. These are matters best left to the Tribe's courts themselves.

The Seventh Circuit's decision in *Altheimer & Gray* provides a useful contrast. 983 F.2d 803. There, a tribal corporation had entered into a letter of intent with an Illinois corporation. Both parties had agreed that Illinois law would apply and that the matter would be decided in the state or federal courts of Illinois. The central dispute was the application of federal law to the letter of intent, and thus there was little impact on the tribe's internal affairs. The court concluded:

> In this case, . . . the tribal entity wished to avoid characterization of the contract as a reservation affair by actively seeking the federal forum. In the Letter of Intent, Sioux Manufacturing Corporation [SMC] explicitly agreed to submit to the venue

and jurisdiction of federal and state courts located in Illinois. To refuse enforcement of this routine contract provision would be to undercut the Tribe's self-government and self-determination. . . . If contracting parties cannot trust the validity of choice of law and venue provisions, SMC may well find itself unable to compete and the Tribe's efforts to improve the reservation's economy may come to naught.

*Id.* at 815.

In contrast, there is every indication that this case involves substantial issues of tribal governance and delves into the Tribe's internal political affairs. In this respect, this case is closer to *Prescott v. Little Six, Inc.*, 897 F. Supp. 1217, 1222 (D. Minn. 1995), in which the court dismissed the ERISA claims without prejudice to allow a tribal court to determine whether benefits had been validly extended to the plaintiffs. *See also Prescott v. Little Six, Inc.*, 387 F.3d 753 (8th Cir. 2004) (holding that district court erred when, after requiring exhaustion in tribal court, it failed to defer to that court's determination the no ERISA benefit plans were created), *cert. denied*, 125 S.Ct. 2257 (2005).

To resolve this dispute in federal court when a tribal court is available is contrary to the tribal court exhaustion doctrine enunciated by the Supreme Court in *National Farmers Union* and *LaPlante*. Given the considerations the Supreme Court has set forth supporting tribal authority and tribal jurisdiction, I agree with the defendants that this court should defer to the tribal court. Accordingly, the case will be dismissed without prejudice. The remaining motions pending before me are denied as moot.

**SO ORDERED** this __26th__ day of June, 2006.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge